HERNÁNDEZ, DEMANDANTE Y APELADO, *v.* ALGARIN ET AL., DEMANDADOS Y APELANTES.

APELACIÓN procedente de la Corte de Distrito de Humacao en pleito sobre desahucio.

No. 2686.—Resuelto en junio 23, 1922.

DESAHUCIO—CONFLICTO DE TÍTULOS.—Cuando el título invocado para resistir el desahucio es la donación y la prueba demuestra que tal contrato no llegó a formalizarse como exige el artículo 641 del Código Civil, es preciso concluir que no se ha establecido un conflicto de títulos que impida el desahucio.

Los hechos están expresados en la opinión.

Abogado de las apelantes: *Sr. A. Aponte, Jr.*

Abogado del apelado: *Sr. C. Travecier.*

EL JUEZ ASOCIADO SR. FRANCO SOTO, emitió la opinión del tribunal.

Este es un caso de desahucio. La demanda se estableció originalmente contra José Algarín, pero más luego Justa González, esposa del demandado, se hizo parte en el procedimiento y se constituyó en demandada sin oposición del demandante y con permiso de la corte inferior.

El demandante alegó que es dueño de cierta finca urbana radicada en el pueblo Las Piedras, municipio del mismo nombre; que los demandados habitan la casa sin pagar canon o merced alguno por consentimiento del dueño de quien era un empleado José Algarín y que han sido requeridos para desalojarla, lo que han rehusado hacer. Los demandados negaron específicamente los hechos alegados en la demanda, y como materia nueva constitutiva de oposición alegaron: que Justa González es la única dueña de la finca urbana objeto de esta acción; que la adquirió de Julio Camacho mediante la intervención de Manuel Márquez, a cuyo favor se 'hizo la escritura, por no hallarse de momento dicha Justa González en el sitio del otorgamiento.

Celebrada la vista del caso la corte inferior dictó sentencia declarando con lugar la demanda, y contra esta sentencia se ha presentado el presente recurso.

El único error señalado por el apelante se refiere a que la corte inferior erró al apreciar la prueba y declarar con lugar el desahucio.

El apelante sostiene que Justa González es dueña del inmueble y tiende a demostrar que existe un conflicto de títulos, el cual no podía resolverse dentro de los límites de un juicio especial y sumario, como lo es el desahucio. Para que pudiéramos examinar la cuestión en la forma así planteada se nos hace indispensable que analicemos la prueba que fué practicada por las partes.

El demandante adquirió la finca urbana que describe en su demanda por compra a Avelino Márquez Díaz, mediante escritura otorgada ante el notario Carlos Travecier en 2 de agosto de 1921. Avelino Márquez Díaz y Emilia Roig Hernández fueron declarados únicos y universales herederos de su hijo Manuel Márquez Roig, quien había fallecido el 15 de enero de 1919; y este último había a su vez adquirido dicha finca por compra a Julio Camacho Ramírez, también por escritura otorgada ante el mismo notario, en marzo 21, 1918. Esta es la prueba documental tal como aparece del récord y ahora debemos insertar las declaraciones que parecen ser más favorables a la causa de la demandada. Empezaremos por su propia declaración que dice: que sostuvo relaciones amorosas con Manuel Márquez, dando por resultado que él la sedujo yéndose a vivir los dos a una casa de él; que le dijo que le iba a comprar una casa y habló con Julio Camacho, vendedor de la casa; que se hizo la compra de la casa y vivieron juntos en ella hasta tres meses después que murió Manuel Márquez; que como a los nueve meses de muerto él, se casó ella con José Algarín y se fué para Caguas como seis meses, dejando la casa alquilada; que ella fué quien la alquiló y quien cobraba las rentas; que quien la vivía era Enrique Martínez y le pagaba a ella personalmente las rentas; que cuando ella estaba en Caguas, Avelino Márquez era quien cobraba la mensualidad y se las lle-

vaba a Caguas cuando la testigo no venía a Las Piedras;
que Avelino Márquez era el padre de Manuel Márquez y es-
taba enterado que ella vivía con su hijo y estaba enterado
de todo; que inmediatamente después de la muerte de Ma-
nuel Márquez ella se fué a vivir a la casa de don Avelino,
porque ellos no quisieron que viviese sola y entonces fué que
alquiló la casa a Enrique Martínez.

Las declaraciones del vendedor del inmueble, Julio Ca-
macho, y de uno de los inquilinos que fué de la casa, Enrique
Martínez, en lo pertinente, tienen relación con la defensa
que opone la demandada. El primero declara: que él era
dueño de una casa en la calle Nueva de Las Piedras; que
una vez Manuel Márquez le dijo que le vendiera la casa con
el objeto de dársela a esta muchacha Justa González y con-
vinieron precio, y él lo mandó a firmar la escritura en casa
de Travecier, viniendo el testigo como a los tres días a fir-
marla; que el testigo encontró a Manuel Márquez en Las
Piedras y le pagó la casa; que él trató la escritura a nombre
de la muchacha, y que la compra la hizo con la intención
de regalársela a esa joven; y el segundo declara: que conoce
a la demandada; que vivió en una casa en la calle Nueva
de Las Piedras; que el testigo necesitaba una casa para
trasladar su familia y habiéndose enterado de que esta casa
estaba desocupada, trató de obtenerla en alquiler. Que en
primer término habló con don Avelino Márquez y él le dijo
que para los efectos del alquiler fuera a su casa y la señora
le manifestó a nombre de la demandada lo que pretendía
por el alquiler de la casa; que efectuó el primer pago de
los alquileres a la señora del Sr. Márquez mediante una carta
y después recibió órdenes de don Avelino Márquez para que
efectuara el pago a la demandada, habiéndole manifestado
que tenía el propósito de ayudarla y ella estuvo tres o cuatro
meses recibiendo la renta.

No se puede negar que la compra del inmueble la hizo
Manuel Márquez Roig mientras sostenía relaciones amorosas

con la demandada Justa González y vivían como marido y mujer. Esta condición que ellos mantenían, viviendo bajo un mismo techo, es la que sirve de base a Justa González para hacer su alegación de que la compra que realizó Manuel Márquez Roig fué para ella, como una donación que recibía de su amante, o sea, como una consideración a la misma. Ella aparece haber sido seducida por Manuel Márquez Roig y que éste concibió la idea de hacerle donación de la casa en que ellos mantuvieron sus relaciones amorosas y como recompensa al disfrute que él de ella recibía así como en atención a sus cuidados, como consecuencia de esas relaciones. Estos incidentes que suelen ocurrir en la vida real son siempre de interés bajo un punto de vista sentimental, pero cualquiera que sea su impresión en nuestro ánimo, una situación así había de estar definida en la ley, pero no siéndolo, la misma ley que rige al presente caso debemos aplicarla rígida y fríamente para que de su aplicación resulten las verdaderas garantías y solemnidades que establece. Manuel Márquez Roig no demostró toda la diligencia necesaria para haberse cuidado de que su intención hubiera tenido un resultado legal y práctico. Si su propósito fué hacer una donación, él no se cuidó de llenar los requisitos que son indispensables y se exigen como un imperativo legal, en los casos de una donación de bienes inmuebles en donde la formalidad de la escritura pública es requisito de esencia para su completa validez. El artículo 641 del Código Civil Revisado dice:

"Artículo 641.—Para que sea válida la donación de cosa inmueble ha de hacerse en escritura pública, expresándose en ella individualmente los bienes donados y el valor de las cargas que deba satisfacer el donatario.

"La aceptación podrá hacerse en la misma escritura de donación o en otra separada; pero no surtirá efecto si no se hiciese en vida del donante.

*   *   *   *   *   *   *

"Si cuando se trata de donaciones de bienes raíces ordena el

código, bajo conminación de nulidad, que se otorguen y acepten por escritura pública, expresándose en ella individualmente los bienes donados y el valor de las cargas que deba satisfacer el donatario, percíbese sin el menor esfuerzo que su objeto es, no sólo autenticar un acto de tanta trascendencia como la donación de bienes inmuebles, comunicándole la permanencia, solemnidad y efectos de los instrumentos públicos, sino colocarla, por virtud de un imperativo legal, en las condiciones requeridas por la Ley Hipotecaria para su inscripción en el registro público, salvando así la ineficacia jurídica respecto de tercero." Scaevola, Código Civil, tomo 11, pág. 565.

Ante la disposición legal que citamos y el comentario a la misma, las declaraciones del primitivo vendedor del inmueble, Julio Camacho Ramírez, quien refiere las manifestaciones del causante, Márquez Roig, acerca de su intención de donar la casa, así como los actos posteriores de Justa González, después de su muerte, cobrando los alquileres de la casa, no tienen en absoluto valor legal y ni siquiera envuelven un indicio o principio aparente de prueba para que pudiera originar un conflicto de títulos y sostener su posesión material del inmueble hasta resolverse dicho conflicto dentro de las amplias oportunidades de un juicio ordinario. Y no es posible alegarse que al discurrir sobre este caso y examinar la prueba estamos resolviendo el derecho de propiedad de las partes. No es así. Lo que se ha hecho necesario demostrar es que la alegación de la demandada Justa González está desnuda de toda prueba para sostenerla porque carece de todo título ya que no cabe equiparar el modo de adquirir en cualquier otro contrato con el de una donación de un inmueble en donde la formalidad de la escritura pública es preceptiva, y sin ella no existe título, como ocurre en el presente caso.

En consecuencia de las consideraciones expuestas, la sentencia debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Wolf, Aldrey y Hutchison.